NADINE S. SAMTER, WA Bar #
23881
nsamter@ftc.gov
KATHARINE F. BARACH, WA Bar
# 51766
kbarach@ftc.gov
Federal Trade Commission
915 2nd Ave., Suite 2896, Seattle, WA
98174
Tel: (206) 220-6350/Samter Cell
(202) 725-4585
Fax: (206) 220-6366
CARLA L. CHEUNG, CA Bar #
291562 (Local Counsel)
ccheung1@ftc.gov
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
Tel: (310) 824-4300/Cell: (202) 644-
6785
Fax: (310) 824-4318

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

ROB BONTA
Attorney General of California
NICKLAS A. AKERS
Senior Assistant Attorney General
JUDITH FIORENTINI
Supervising Deputy Attorney General
MICAH C.E. OSGOOD (SBN
255239)
MICHELLE BURKART (SBN
234121)
Deputy Attorneys General
California Department of Justice
455 Golden Gate Ave. Suite 11000
San Francisco, CA 94102
(415) 510-44002
mike.osgood@doj.ca.gov

Attorneys for Plaintiff
THE PEOPLE OF THE STATE OF
CALIFORNIA

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and THE PEOPLE OF THE STATE OF CALIFORNIA, <br><br> Plaintiffs, <br><br> vs. <br><br> CRI GENETICS, LLC, a limited liability company, also doing business as OMNIPGX, <br><br> Defendant. | **Case No. 2:23-CV-9824** <br><br> **COMPLAINT FOR PERMANENT INJUNCTION, CIVIL PENALTIES, AND OTHER RELIEF** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs, the Federal Trade Commission ("FTC"), and The People of the State of California, acting through Rob Bonta, Attorney General ("California") (collectively, "Plaintiffs"), for their Complaint allege:

1.      The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), which authorizes the FTC to seek, and the Court to order, permanent injunctive relief for Defendant's acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

2.      Plaintiff California brings this action under California's Unfair Competition Law, Business and Professions Code § 17200 *et seq*., and California's False Advertising Law, Business and Professions Code §17500 *et seq*., which authorize the Court to order civil penalties, injunctive relief, restitution, and other equitable relief.

## SUMMARY OF CASE

3.      Defendant CRI Genetics, LLC ("CRI" or "Defendant"), a DNA testing company, violated Section 5 of the FTC Act, 15 U.S.C. § 45(a), and California's Unfair Competition Law and False Advertising Law, by misrepresenting to consumers that its DNA ancestry testing is more accurate and detailed than those of CRI's competitors and, using a patented software algorithm for matching DNA, CRI's ancestry reports would show consumers exactly where their ancestors were from and when they arrived there with over 90 percent accuracy going back 50 or more generations.  Defendant made these claims on the Internet through a variety of deceptive means that violated Section 5 of the FTC Act, and California's Unfair Competition Law and False Advertising Law.  These claims were widely disseminated on Defendant's own websites.

4.      Defendant also violated Section 5 of the FTC Act, and California's Unfair Competition Law and False Advertising Law, through the use of numerous deceptive marketing tactics designed to manipulate users into purchases.

Defendant first lured consumers to its marketing websites using websites deceptively formatted to look like independent sites for unbiased reviews and ratings of DNA ancestry testing companies.  Defendant failed to disclose on the websites that it owned them and provided the content in them.  Defendant then doubled down on the deception by posting phony consumer reviews purportedly from "satisfied" customers.  Next, Defendant used a false message that test kits were in limited supply to pressure consumers to buy products and services immediately, claiming without basis that packages were often "out of stock" or "backordered," and "not always available."  Defendant forced consumers to click through numerous pop-up pages of offers characterized as "special rewards" that purportedly "9.1 out of 10 consumers choose."  Defendant trapped many consumers into unwanted purchases by deceptively labeling the pop-up pages as steps in the transaction and representing to consumers that their order "was not complete" and that they would have the opportunity to review their selected items and amounts in a final summary before being charged.  Instead, Defendant charged consumers immediately and failed to disclose this practice, forcing many consumers to go through Defendant's refund process to recoup the unwanted charges.  Together these deceptive marketing tactics, many of which can be described as "dark patterns," manipulated consumers, based on false claims deceiving them about the product quality and popularity, into making immediate purchases.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (b)(2), (c)(2), and (d), and 15 U.S.C. § 53(b).

CRI Genetics, LLC Complaint – Page 3

**PLAINTIFFS**

7.      The FTC is an independent agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys.  15 U.S.C. §§ 41–58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

8.      The People of the State of California bring this action by and through Attorney General Rob Bonta, who is authorized by California Business and Professions Code §§ 17535 and 17536 to enforce the California False Advertising Law, California Business and Professions Code § 17500 *et seq*., and authorized by California Business and Professions Code §§ 17204 and 17206 to enforce the California Unfair Competition Law, California Business and Professions Code § 17200 *et seq*.

**DEFENDANT**

9.      Defendant CRI Genetics, LLC, also doing business as OmniPGX, is a California limited liability corporation with its principal place of business at 122 Sheldon Street, El Segundo, California 90245.  CRI transacts or has transacted business in this District and throughout the United States. At times relevant to this Complaint, acting alone or in concert with others, Defendant has advertised, marketed, distributed, or sold DNA test kits and ancestry and health and wellness reports to consumers throughout the United States.

**COMMERCE**

10.     At all times relevant to this Complaint, Defendant has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANT'S COURSE OF CONDUCT
### Defendant's DNA Testing Products and Services

11.     Defendant has advertised, marketed, promoted, offered for sale, and sold DNA saliva swab test kits since at least 2017.  Defendant has also advertised, marketed, promoted, offered for sale, and sold DNA reports generated from the results of the saliva swab kits processed by a third-party laboratory.  The reports purportedly provide consumers with information about their genetic ancestry, potential health and wellness traits and conditions, and paternity.  Defendant sells its DNA test kits and ancestry and other reports directly to consumers through its website, www.crigenetics.com (the "CRI Website").

12.     Defendant's basic package includes three distinct reports that purport to show consumers' geographical and ethnic ancestry: the Recent Ancestry Report, the Advanced Ancestry Report, and the Advanced Ancestry Timeline.  The Recent Ancestry Report is an analysis of consumers' DNA that purports to show consumers their ethnic and geographic ancestry from the last five generations of their family.

13.     Defendant's Advanced Ancestry Report is an analysis of consumers' DNA that purports to show consumers their ancestry dating back thousands of years, reflecting consumers' "oldest" ancestries in their family histories.

14.     Defendant's Advanced Ancestry Timeline is an analysis of consumers' full DNA sequence that purports to show consumers *when* certain ethic or regional features entered their DNA, dating back more than 50 generations.

15.     Defendant also offers and sells a more expensive package that includes the basic package with additional DNA-based health and wellness reports. The DNA health and wellness reports purport to identify statistically significant associations between consumers' genetic markers and certain medical conditions and traits, such as a propensity to have lactose intolerance or a certain eye or hair

color.

16.     Defendant also offers and sells consumers additional products and services after consumers make initial package selections.  These additional offers typically include DNA reports providing additional information regarding maternal or paternal ancestry lines and celebrity reports that Defendant claims will match consumers' DNA with those of famous people.  Defendant also offers customers additional DNA test kits for family members and expedited delivery on their reports after consumers select their initial packages.

17.     Defendant's packages range from $99 to $199, depending on the number of reports consumers purchase.  Some consumers pay over $300 to Defendant, depending on the number of products or services that they choose to order in addition to the initial package.  Defendant's gross revenues from 2017 to 2021 are as much as $42.8 million.

## DNA Testing Generally

18.     Genetic testing for ancestry involves comparing the genetic variations in a person's DNA sequence to certain genetic mutations in the DNA sequences of other people who have submitted their DNA samples for genetic testing and whose ancestries are known from genealogical research and confirmed family histories.  These pools of DNA samples from people with established ancestries are referred to as "DNA Reference Datasets."

19.     Genetic testing is also used to match genetic patterns of people with certain known health conditions or traits.  For example, a known genetic mutation may be associated or correlated with certain traits, such as having blue eyes or red hair, or may be associated with certain health conditions such as lactose intolerance or the tendency towards insulin resistance.  Although genetic testing can identify these mutations in the genome, people who have the mutations do not necessarily have the associated trait or condition associated with the mutation because genetic

mutations are not always expressed.

20.     Most genetic testing companies use similar standardized tests for processing consumers' biological samples.  The results of these tests do not significantly vary based on who performs the tests if they are processed in an accredited lab.  As a result, each genetic testing company will likely identify the same genetic variations and mutations in a person's DNA with a high level of accuracy.  The results of the DNA tests showing genetic mutations are commonly referred to as "DNA Raw Data Profiles."  Although many DNA testing companies permit consumers to download and keep their DNA Raw Data Profiles, Defendant does not.

21.     After the test kits are processed and the DNA Raw Data Profiles are compiled, DNA testing companies prepare reports that estimate consumers' ancestries or traits by comparing certain segments of those consumers' DNA from the DNA Raw Data Profiles to the companies' DNA Reference Datasets.  Each company's DNA Reference Dataset is comprised of publicly available DNA data from people with known ethnicities, as well as DNA data that each company compiled from its own customers' DNA Raw Data Profiles.  As a result, each company's DNA Reference Dataset is unique and proprietary to that company.

22.     The size and variation of the known ancestries in each company's DNA Reference Dataset can also vary substantially. The genetic testing companies with the largest and most ethnically diverse DNA Reference Datasets are likely to produce the most accurate ancestry reports.  CRI does not have the largest and most ethnically diverse DNA Reference Datasets by a significant margin compared to several other DNA testing companies in the market.

23.     Genetic testing companies estimate consumers' ancestry composition by comparing consumers' DNA Raw Data Profiles with the companies' proprietary DNA Reference Datasets using software algorithms.  Each company's

software algorithm is proprietary as well.  The algorithms "predict" consumers' ancestry and the companies generate reports to communicate the information to consumers, often through various graphics and with varying levels of detail and analysis.  Each company's algorithmic estimations of ancestry also have different margins of error.

24.   DNA testing for ancestry is at best an *estimation* of one's ancestry and the achievable accuracy in ancestry predictions is limited.  Further, because the DNA Reference Datasets and matching algorithms are different for every company, consumers who test their DNA with more than one company may find significantly different estimations of their ancestry from each of their tests.

25.   DNA ancestry testing also is limited in its usefulness for accurately determining a person's geographical heritage because genes do not correspond exclusively to one part of the world.  DNA ancestry tests merely look for how often variations occur and algorithmically assign geographical areas based on statistical probabilities.  For example, a genetic variant found in Africa may also be found in South America.  As a result, DNA ancestry tests cannot provide a precise picture of when one's ancestors lived in a particular geographical area.

## Defendant's Claims About The Accuracy
## Of Its DNA Testing Products and Services and Algorithm

26.   Since 2017, Defendant has advertised, marketed, and promoted its DNA-based reports through a variety of methods, including through several websites (crigenetics.com, geneticsdigest.com, geneticsillustrated.com, buyerranking.com, omnipgx.com, and herbalistreport.com); search engine and display advertising; consumer testimonials; and social media.

27.   From 2017 to April 2021, Defendant's core product representations centered on the accuracy of its ancestry breakdowns reported to consumers from their DNA test results.  Defendant claimed that its DNA ancestry testing products

and services: (1) were the most accurate and detailed DNA ancestry tests and reports available on the market; (2) would show consumers' ancestry breakdown with an accuracy rate of over 90%; and (3) would show exactly where consumers' ancestors came from and exactly when they arrived there going back more than 50 generations.

28.     From 2017 to April 2021, to induce consumers to purchase its DNA testing products and services, Defendant disseminated or caused to be disseminated advertisements and promotional materials, including, but not necessarily limited to, the attached Exhibits A through M, through the means described above.  Defendant represented that its products were the most accurate and detailed DNA ancestry tests and reports available on the market in advertisements that contained the following statements and depictions:

A. **From www.crigenetics.com (excerpts attached as Exhibit A (Oct. 14, 2020) ("Ex. A"), p. A-6; and Exhibit B (Oct. 22, 2020) ("Ex. B"), p. B-15):**

"CRI is an advanced team of Geneticists, Anthropologists, and Social Scientists, who work together to deliver you the most accurate estimation of your ancestry possible."

B. **From www.crigenetics.com, (excerpts attached as Ex. A, p. A-4; Ex. B, p. B-32; Exhibit C (Nov. 18, 2020) ("Ex. C"), p. C-6; Exhibit D (Dec. 2, 2020) ("Ex. D"), p. D-4):**

"Simply put, the genetic expertise at CRI Genetics is unmatched anywhere else in the business.  That means that you get fascinating Ancestry reports and useful Health reports that are not just detailed, but are also extraordinarily accurate.  We're very confident you will love every step of the process at CRI Genetics."

29.     Defendant also represented that its products and services would show

consumers' ancestry breakdown with an accuracy rate of over 90% in advertisements that contained the following statements and depictions:

A. **From www.crigenetics.com, (excerpts attached as Ex. A, p. A-18; Ex. B, p. B-13; and Exhibit E (Dec. 9, 2020) ("Ex. E"), p. E-3:**

"Genealogical testing is much like predicting the weather:  it's not possible to be 100% correct all the time, but we can at least be mostly correct most of the time by observing patterns, knowing history, and using statistics.  In our case, our results are typically 99.9% accurate, which is a little better than trying to predict the weather."

B. **From www.crigenetics.com, (excerpts attached as Ex. A, p. A-10):**

"**You'll Never Look At Family Photos The Same Way Again**

Knowing your background gives you a deeper connection to all corners of the world that are uniquely YOURS.  Know exactly where your DNA comes from with **90%+ accuracy** . . . Get A Detailed, Accurate Breakdown of Your Heritage." [emphasis in original].

C. **From www.crigenetics.com, (excerpts attached as Ex. E, p. E-6):**

"The BioGeographical Ancestry estimation we have determined for you is extremely accurate.  The latest genetic reading equipment, our patented DNA analysis software, along with our experience and techniques allow us to achieve accuracy greater than 99.9%."

30.     Defendant further represented that its products would show exactly where consumers' ancestors came from and exactly when they arrived there going back more than 50 generations in advertisements that contained the following statements and depictions:

A. **From www.crigenetics.com, (excerpts attached as Ex. A, p. A-8; Ex. B, p. B-1; Ex. D, p. D-1; Ex. E, p. E-1):**

"Our **Advanced Ancestry Timeline** takes you back 50+ generations, to

find out exactly WHEN and WHERE your ancestors are from."
[emphasis in original].

B. **From www.crigenetics.com (excerpts attached as Ex. C, p. C-2):**
**"Timing and Location:** By examining 642,824 relevant markers across
your genome using my patented DNA analysis software, I will be able to
tell you not only **where your ancestors came from, but also exactly**
***when*** **they arrived."** [emphasis in original].

C. **From www.crigenetics.com (current version available for viewing at**
**https://www.youtube.com/watch?v=OGLiMoE3xfY) (transcript**
**available on request)**:
"CRI Genetics matches your unique DNA with 642,824 genetic markers
to both show you where your ancestors are from and also to pinpoint
precisely when they got there."

31.     Defendant's claim that CRI's DNA testing products and services are
more accurate and detailed than those of other companies on the market was
unsubstantiated at the time it was made because Defendant did not know, nor could
it have known, the size and composition of those companies' DNA Reference
Datasets, or the margin of errors in those companies' matching algorithms. This
information is guarded proprietary information for each company. Because
Defendant did not have access to this information, it could not have had a
reasonable basis for its claim of superior accuracy.

32.     Defendant also could not establish each consumer's ancestry with an
accuracy rate of 90 percent or more because the accuracy of ancestry estimations
for each consumer can vary considerably with their ancestries. These predictions
have different probabilities of errors in estimation, again depending on the
composition and size of the DNA Reference Dataset. Most ancestry estimations
are not nearly as accurate as 90 percent.

CRI Genetics, LLC Complaint – Page 11

33.     Finally, Defendant's claim that its DNA ancestry tests can show *exactly* when and where consumers' ancestors were from dating back 50 or more generations was unsubstantiated and false.  DNA ancestry tests merely identify variations in one's genome and then those variations are algorithmically assigned geographical areas based on statistical probabilities.  Genes do not correspond to exclusive geographical locations because human migration patterns over the centuries were varied and wide.  As a result, DNA ancestry tests alone cannot precisely or exactly pinpoint when a particular person's ancestors lived in a particular geographical area.  Such accuracy and detail of one's ancestry can only be achieved with in-depth genealogical research into one's family history.  Even then there are difficulties estimating *exactly* where someone's ancestors are from and when they lived there, especially dating as far back as 50 or more generations. In addition, CRI did not provide the genealogical tools for consumers to research their actual families' histories or migration patterns or to find relatives and discover family relationships.

### Defendant's False Patent Claim

34.     From 2017 to April 2021, Defendant also represented that its DNA matching algorithm software was patented in advertisements that contained the following statement and depiction:

**From www.crigenetics.com, (excerpts attached as Ex. A, p. A-4; Ex. B, p. B-32; Ex. C, p. C-6; Ex. D, p. D-4):**

"We use patented DNA algorithms designed by renowned Molecular Geneticist Alexei Fedorov, who was apprentice to Nobel Prize winning scientist Walter Gilbert at Harvard University."

35.     In fact, Defendant never obtained a patent for its matching algorithm or software.

CRI Genetics, LLC Complaint – Page 12

**Failure To Disclose Defendant's Material**

**Connection To Marketing Websites**

36.     From 2017 to February 2021, Defendant purchased search advertisements from Google and Bing that displayed textual links to websites that Defendant owned and operated, including but not limited to, the websites geneticsdigest.com and buyerranking.com.  Consumers who entered search terms in Google and Bing such as "DNA testing," "genetic testing," "Ancestry DNA," or "23andMe," were shown, on the first page of the search results, Defendant's search ads, which claimed consumers would find ratings for the top choices for DNA ancestry testing companies on Defendant's websites.

**The Genetics Digest Website**

37.     From 2017 until February 2021, consumers who clicked on the search advertisements that linked to geneticsdigest.com were taken to a website depicting a heading in large bold font titled "Genetics Digest," which claimed to be the name of the organization that owned the website.

38.     The Genetics Digest website represented that it was an independent and unbiased source of information for DNA testing and did not disclose that Defendant's principal owned the website and produced its content and, therefore, Defendant had a material connection to the website.  For example, the "About" section of the website claimed that the website offered objective information with phrases implying it was intended to help consumers decide which products "really are the best" and "really are high quality:"

**From the landing page of geneticsdigest.com (excerpts attached as Exhibit F (Dec. 17, 2020) ("Ex. F"), pp. F-8, 17, and 19; Exhibit G (Nov. 4, 2020) ("Ex. G"), p. G-9; Exhibit H (Feb. 23, 2021) ("Ex. H"), p. H-11):**

**About**

At Genetic Digest, we're consumers too and we want the best deals on the highest quality goods at the most reasonable prices as much as anyone else. When all of our senses are constantly bombarded with advertising at every moment of every day, it's hard to tell which deals really are the best and which products really are high quality.

39.    The introductory "Welcome" section of the Genetics Digest website stated that Genetics Digest's aim was "to provide credible, accurate information" and "unbiased product reviews for consumers looking to purchase anything related to the field of genetics," as shown in the following statement and depiction:

**From the "About" page of geneticsdigest.com (excerpts at Exhibit Ex. G, p. G-1):**

**Welcome to Genetics Digest.**

Our goal is to provide credible, accurate information about the latest advancements in DNA analysis and genome technology. We have news alerts for scientists and DNA enthusiasts and unbiased product reviews for consumers looking to purchase anything related to the field of genetics, so that scientists and consumers can make educated decisions when studying DNA.

We are a team of writers and scientists who are passionate about all things DNA—from double helixes to chromosomes to mitochondrions, we love it all.

40.    The "Terms and Conditions" page of the Genetics Digest website also stated that Genetics Digest was "an interactive online service . . . owned and operated by GeneticsDigest.com" that consists of "independent reviews and judgments based on our judgement [sic] of work of third party experts across multiple categories," as shown in the following statement and depiction:

**From the "Terms and Conditions" page of geneticsdisgest.com (excerpts at Ex. G, p. G-3):**

CRI Genetics, LLC Complaint – Page 14

1
2
3
4
5
6

GeneticsDigest.com is an interactive online service on the World Wide Web portion of the Internet, owned and operated by GeneticsDigest.com. ("GeneticsDigest.com"), and consisting of independent reviews and evaluations based on our judgement of work of third party experts across multiple categories, as well as presentations where consumers can obtain conclusions, recommendations, or suggestions about what products or services are either 'best bets', 'top-rated', 'suggested', or in some way 'recommended', and rankings of third party reviews and other information sources across multiple categories. "Content" means the evaluations, presentations, rankings, reviews, other information, advertisements, chat room discussions, photos, video, graphics, music and sound contained on, distributed through, linked, downloaded or accessed from any of the services contained on GeneticsDigest.com, whether such Content is owned by GeneticsDigest.com or third parties. "User" means each person who establishes or accesses a connection for access and for use of GeneticsDigest.com.

7
8
9
10
11
12
13
14

41.     Sometime on or around February 2021, Defendant inserted in the Genetics Digest website the statement that "Genetics Digest has a financial connection to the products sold via links on our website such as our top choice: CRI Genetics."  The statement was placed at the top of the landing page of the website, in very small print in light gray color, just above the title "**GENETICS DIGEST**," depicted as follows:

**From geneticsdigest.com (excerpts at Ex. H, p. H-1):**

15
16
17
18
19
20
21
22

| 2/23/2021 | Free Review of Ancestry DNA Tests \| Genetics Digest |
|---|---|

Genetics Digest has a financial connection to products sold via links on our website such as our top choice: CRI Genetics

**GENETICS·DIGEST**
(index.html)

**3 Essential Tips
You Must Know Before
Buying a DNA Test**
Your Free Guide to the Highest Rated DNA Test

23
24
25
26
27
28

42.     Sometime on or around March 2021, Defendant replaced the prior statement with the statement, "Genetics Digest aims to provide you with helpful information about DNA analysis and Genome Testing advancements.  We are affiliated with CRI Genetics." This statement was similarly placed at the top of the Genetics Digest landing page, with a much smaller font size to the title "Genetic Digest" and in a very light gray color, depicted as follows:

CRI Genetics, LLC Complaint – Page 15

**From geneticsdigest.com (excerpts attached at Exhibit I (June 9, 2021) ("Ex. I"), p. I-1):**



43.     Placing the statements above the title in much smaller size font and much lighter color than the prominent title of the website made them likely to be overlooked by consumers.  Further, these statements did not disclose or adequately disclose the true nature of Defendant's material connection to the Genetics Digest website.  The disclosures only generally referenced CRI's "financial connection to" or "affiliation with" Genetics Digest, which did not adequately inform consumers that, in fact, Defendant effectively owned and operated the Genetics Digest website and that the reviews and ratings of the DNA ancestry companies were not based on independent and unbiased research.

## The Buyer Ranking Website

44.     From at least 2018 until April 2021, consumers who clicked on the search advertisements that linked to buyerranking.com were taken to a website depicting a heading in large bold font titled "Buyer Ranking," which claimed to be the name of the organization that owned the website.

45.     The Buyer Ranking website represented that it was an independent and unbiased source for consumer information and did not disclose that Defendant owned the website and produced its content and, therefore, had a material connection to the website.  Defendant made statements on Buyer Ranking claiming

that, "at BuyerRanking, we're consumers too and we want the best deals on the highest quality goods at the most reasonable prices as much as anyone else . . . it's hard to tell which deals are really the best and which products really are high quality," and suggesting that the website's "mission" is to "empower" the consumer "as a buyer" with "confidence" to get "the best bang for your buck," as shown in the following statements and depictions:

**From buyerranking.com "About" section (excerpts attached at Exhibit J (Dec. 30, 2020) ("Ex. J"), p. J-11):**



ABOUT

At BuyerRanking, we're consumers too and we want the best deals on the highest quality goods at the most reasonable prices as much as anyone else. When all of our senses are constantly bombarded with advertising at every moment of every day, it's hard to tell which deals really are the best and which products really are high quality.

**From buyerranking.com (excerpts at Ex. J, p. J-1):**



As the Senior Editor at Buyer Ranking, I always tell my team of writers to do basic research. Our mission is to empower you as a buyer, so that you can be confident you're getting the best bang for your buck. We have to do basic research to accomplish that...

46.     On or around April 2021, Defendant took down the Buyer Ranking website.

**<u>Misleading Reviews and Ratings</u>**

47.     From 2017 until February 2021, the Genetics Digest website provided consumers with information about what to look for when choosing a DNA ancestry testing company and mistakes to avoid.  It also represented to consumers that the Genetics Digest website provided independent and unbiased reviews and ratings of DNA ancestry testing companies.

48.     On the Genetics Digest website, the "editors" claimed to have conducted unbiased and independent research of many of the DNA testing companies on the market, stating that Genetic Digest's "team of scientists, researchers, and writers" have "examined nearly every test in the booming market" to help consumers "sort out the great ones from the cheap knockoffs," as shown in the following statement:

**From the geneticsdigest.com landing page (excerpts at Ex. F, p. F-2; Ex. G, p. G-10; Ex. H, pp. H-2 to H-3):**

"**Now it's harder than ever to find a good DNA test . . .** Luckily, you're in the right place.  Our team of scientists, researchers, and writers at Genetics Digest know the field better than most. We've examined nearly every DNA test in the booming market.  We'll help you sort out the great ones from the 'cheap knockoffs'" (emphasis in original).

49.     The website then represented that, based on the purportedly independent and unbiased research of Genetics Digest's "team," CRI's DNA ancestry testing was the top choice over the DNA testing companies, Ancestry DNA and 23andMe.

50.     In describing the attributes of Defendant's DNA ancestry testing that led to Genetic Digest's top choice, the Genetics Digest website repeated the same deceptive accuracy claims that appeared on the CRI website, including that CRI's DNA ancestry reports "are generated using a patented DNA analysis algorithm created by Alexei Fedorov," and that the reports have "a deeply detailed **Ancestry Timeline** that shows you **where** your relatives are from and exactly **how and when** they got there, going back over 50 generations" [emphasis in original], as shown in the following statement and depiction:

**From geneticsdigest.com (excerpts at Ex. F, p. F-5; Ex. H, p. H-8):**

**Details/Accuracy of Reports:**

CRI Genetics currently offers **5 unique ancestry reports** that are generated using a patented DNA analysis algorithm created by Alexei Fedorov. Your report features not only a basic geographical breakdown of your ancestry, but also a deeply detailed **Ancestry Timeline** that shows you **where** your relatives are from and exactly **how and when** they got there, going back over 50 generations. It's this commitment to detail that makes CRI Genetics our top choice. See Full Report Here (crigenetics.html)

51.     The Genetics Digest website also represented that CRI had an "Overall Rating: Excellent" and a star rating of "4.9/5" stars, outranking the star ratings for 23andMe and AncestryDNA.  The article also claimed that the "cons" of CRI's testing are that the tests are "Frequently Backordered" and that some tests are "not always available," leading consumers to believe that CRI's tests were in high demand and therefore hard to get, which was not the case.  These representations are shown in the following statements and depictions:

**From geneticsdigest.com (excerpts at Ex. F, p. F-4; *see also* Ex. G, p. G-11; Ex. H, pp. H-7 to H-8):**



52.     Defendant did not disclose the source of the star ratings on the website but, instead, implied that the star ratings were generated from the independent and

unbiased actual product testing and research of the writers of the article. In fact, the star ratings were not based on the independent and unbiased actual product testing and research of the writers of Genetics Digest.

53. From 2018 until April 2021, the Buyer Ranking website also claimed that it provided consumers with information about what to look for when choosing a DNA ancestry testing company. The Buyer Ranking website represented to consumers that it provided independent and unbiased reviews and ratings of DNA ancestry testing companies.

54. On the Buyer Ranking website, the editors claimed to help consumers who were "lost in the market" to find their way, representing that the review was independent and unbiased because Buyer Ranking "sampled DNA tests from 12 different companies" and "analyzed them to see which ones accomplish the benefits listed" on the website, as shown in the following depiction and statements:

**From buyerranking.com (excerpts at Ex. J, p. J-3):**

Lost in the market? We'll help you find your way…

With the DNA market booming the way it is, it can be hard to decide which test to try, especially when more and more new companies are popping up and everyone claims to be the best.

**From buyerranking.com (excerpts at Ex. J, p. J-5):**

Here's how we determined our rankings:

My team and I sampled DNA tests from 12 different companies. We analyzed them to see which ones accomplish the benefits listed above the best.

55. The Buyer Ranking website further represented that its research "team" called the DNA testing companies' customer services pretending to be

CRI Genetics, LLC Complaint – Page 20

confused consumers and presenting various problems and questions to see "how responsive, friendly, patient, and helpful they were," as shown in the following depiction and statements:

**From buyerranking.com (excerpts at Ex. J, p. J-6):**

> **Customer Service** - This is the most fun part of our review. We call and email each company's customer service team with various problems and questions, often where we pretend to be very confused. We scored each company by how responsive, friendly, patient, and helpful they were.

56.    The article then represented that, based on this purportedly independent and unbiased research, Defendant's DNA ancestry testing was the "Top Recommended DNA Testing Service" over the DNA testing companies Family Tree DNA and Living DNA.  In describing the attributes of Defendant's DNA ancestry testing that led to the Buyer Rankings top choice, the website repeated the same deceptive claims that appear on Defendant's website, representing that Defendant has a "Patented DNA Analysis Technology" and that Defendant's DNA ancestry reports provided consumers with "VERY Detailed Genetic Information" and, as shown in the above depiction, Buyer Ranking also represented that CRI had a star rating of "4.7/5" stars, with the "cons" again listed as products "Frequently Out of Stock" and certain tests "not always available," as shown in the following statement and depiction:

**From buyerranking.com (excerpts at Ex. J, pp. J-6 to J-7):**



CRI Genetics, LLC Complaint – Page 21

57.     Defendant did not disclose the source of the star ratings on the website.  Instead, Defendant implied that the star ratings were generated from the independent and unbiased product testing and research of the writers of the article. In fact, the star ratings were not based on the independent and unbiased product testing and research of the writers of the article.

## False Or Misleading Endorsement Claims

58.     From 2017 until sometime around April 2021, Defendant's website homepage and Facebook page also prominently displayed over a dozen endorsements from consumers who claimed they had used Defendant's DNA testing products and services and were satisfied.  These endorsements purportedly reflected the independent experiences and opinions of impartial ordinary users of Defendant's DNA testing products and services.

59.     These endorsements were accompanied with photos of the purported endorsers, their first names and last initials, and a star rating of the endorsers' purported experience with CRI, indicating that they were highly satisfied.  For example, Defendant's website, crigenetics.com, and Facebook page prominently displayed the following endorsements, among others:

**From www.crigenetics.com, (excerpts attached at Exhibit K (Nov. 18, 2020) ("Ex. K"), p. K-3):**



60.     These consumer endorsements posted on the CRI Website and on CRI's Facebook page were completely fabricated.  Defendant paid a third party to write them.  Further, the accompanying photos were not photos of Defendant's customers.  As such, these endorsements did not reflect the independent experiences and opinions of impartial ordinary users of Defendant's DNA testing products and services.

61.     In 2020, Defendant also produced and posted a video on the CRI Website and CRI's Facebook page, and through advertisements placed throughout the Internet.  The video purported to reflect the independent experience and opinion of an impartial ordinary user of Defendant's DNA testing products and services named Wayne, who claimed to be a Native American who tested his DNA with CRI and discovered that he has the oldest DNA found in America.  At the end of the video, Wayne endorsed CRI's DNA ancestry tests and reports and provided a link to CRI's website.  (A link to the video can be found at https://www.crigenetics.com/fb/vsl-wayne).  The video of Wayne was widely disseminated.

62.     In fact, this video does not reflect the independent experience and opinion of an impartial ordinary user of Defendant's DNA testing products and services.  Defendant wrote and produced the video and hired a paid actor to play the role of Wayne.  Wayne is a fictional character whose "experience" with DNA testing is loosely based on one of Defendant's customers, who did not provide Defendant with an endorsement or cooperate in making the video.  Defendant did not disclose or adequately disclose in the video that Wayne was a fictional character or that the video was a paid advertisement.

## Defendant's Deceptive Website Billing Practices

63.     Consumers who choose to purchase one of Defendant's DNA testing packages must click on one of the two packages Defendant offers on the CRI

CRI Genetics, LLC Complaint – Page 23

Website to make the purchase. Once consumers select and click on their desired package, they are prompted to enter and submit their personal and payment information.  The website ordering page did not disclose that when consumers entered their payment information that they would be charged immediately for each item selected for purchase and that the order for that item was final.

64.    After consumers entered and submitted their personal and payment information, Defendant's website offered several additional products or services for purchase.  These additional products and services appeared serially as pop-up pages.  Consumers had to click through as many as five of these offers for additional products and services and either decline or purchase each one before moving on in the ordering and purchasing process.  As described below, Defendant used numerous deceptive marketing techniques, known as "dark patterns," to push consumers into purchasing additional products and services.

65.    Since 2017 until at least June 2021, Defendant represented on each pop-up page offering additional products and services that consumers' orders were not complete and that consumers would have an opportunity to view a final confirmation page and change their selections before being charged.

66.    Each pop-up page prominently displayed a box with a yellow "Wait!" symbol and notified consumers that "Your order is not complete."  Each pop-up page also prominently displayed a graphic depiction of the ordering process above this notification using a bar with arrows indicating that the consumer was at "Step Two PRODUCT OPTIONS" of a three-step process, "Step Three" being a "FINAL CONFIRMATION."  Each additional product or service was characterized as a "Special Reward" that the consumer had been "chosen" to receive that is a "one-time special offer."  The following example of a pop-up page from the CRI Website shows these statements and depictions:

CRI Genetics, LLC Complaint – Page 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**From crigenetics.com (excerpts attached as Exhibit L (June 30, 2021) ("Ex. L"), at p. L-6):**



67.    Consumers were required to scroll to the bottom of each pop-up page to either click on a bright orange button stating, "YES I WANT THIS SPECIAL ADDED TO MY ORDER," or click on a less prominent and gray smaller print button stating, "NO THANKS, I UNDERSTAND THAT I WON'T SEE THIS OFFER AGAIN," to advance through the ordering process. Consumers were also falsely told that "9.1 out of 10 choose this option." These statements and depictions appeared on CRI's website as follows:

CRI Genetics, LLC Complaint – Page 25

**From crigenetics.com (excerpts at Ex. L, p. L-7):**



68.     These statements and depictions on each pop-up page represented to consumers that they had not completed their orders and would have an opportunity to view a final confirmation page where they could edit the items selected and complete their orders before charges for payment were submitted.

69.     As depicted in Paragraph 67 above, each pop-up page also warned consumers to "not hit the 'Back' button as it can lead to a multiple charge on your card" [sic] just below the prominent statement that "Your order is not complete." This tactic dissuaded consumers from backing out of the pop-up pages if they mistakenly chose one of the offers or changed their mind about the selection.

70.     After consumers finished clicking through each of the pop-up pages, they were not taken to a final confirmation page where they could review and edit their selections.  Instead, they were presented with a final page stating, "Thank You For Your Order!  Your order has been successfully processed, you will receive an email with the details," as shown in the following depiction and

CRI Genetics, LLC Complaint – Page 26

statements:

**From crigenetics.com (excerpt at Ex. L, p. L-32):**



71.     Contrary to Defendant's representations that consumers' orders were not complete and could be reviewed and edited, consumers were immediately charged for each selection and did not have an opportunity to review and change or delete their selections on a final confirmation page.  Defendant did not disclose or adequately disclose on any of the pop-up pages to consumers that charges for each item selected would immediately be submitted.  As a result, many consumers ended up with unwanted charges for which they had to go through Defendant's refund process to recoup.

72.     In June 2021, after learning about the FTC's investigation, Defendant revised this ordering process on the CRI Website.  Consumers were still required to select a package and enter their personal and payment information before proceeding through the pop-up pages for additional products and services.  The website ordering page still did not disclose that when consumers entered their payment information that they would be charged immediately for each item selected for purchase and that each order would be final.

CRI Genetics, LLC Complaint – Page 27

73.     On each of the revised website's pop-up pages, the graphic arrow depicted a two-step ordering process, with "Step 2" the point in the ordering process when consumers "REVIEW OPTIONAL ADD-ONS," representing to consumers that their orders were not complete.  The arrow graphic no longer showed a "Step 3" final confirmation.  The revised website also continued to warn consumers to not hit the "Back" button, but then explained that if consumers hit the "Back" button, they "cannot get back to this page once you leave," implying that consumers may interrupt the ordering process if they tried to back out of the page, further manipulating them to continue with the ordering process.  An example of a revised additional offer page on the CRI website showed the following statements and depictions:

**From www.crigenetics.com (excerpts attached as Exhibit M (Mar. 16, 2022) ("Ex. M"), p. M-7):**



74.     Consumers still had to review each pop-up page and scroll to the bottom either to add an additional item to their order or to select not to add the item

CRI Genetics, LLC Complaint – Page 28

to their order to move through the ordering process.  However, at the bottom of each pop-up page of the revised CRI website, a box was displayed showing an itemization of each item the consumer selected thus far, the quantity and the price of the item, and a "subtotal" of charges.  Next to each item selected was a trashcan icon, which commonly indicates that the item next to the icon can be deleted if clicked.  The trashcan icon in CRI's summary of charges box led consumers to believe that they could delete an item before the order became final and a charge for that item was submitted for payment.  An example of the ordering buttons and the summary box with the trashcan icons that appeared on each pop-up page is shown in the following statements and depictions from the CRI Website:

**From www.crigenetics.com (excerpts at Ex. M, pp. M-17 to M-18):**



75.     In fact, when consumers clicked on the trashcan icon next to an item, the item could not be deleted on any of the pop-up pages.  Once consumers completed viewing and clicking through the additional pop-up pages, they received

CRI Genetics, LLC Complaint – Page 29

a final summary of charges without the trashcan icons shown next the item.  The final summary included a message stating, "Thank you for your order!"  The following is an example of the revised website page showing the statement and depiction of the final summary:

**From crigenetics.com (excerpts at Ex. M, p. M-36) (redacted for SPII):**



76.     Contrary to the representations that consumers' orders had not been completed and they could delete selections by clicking on the trashcan icons, Defendant continued to immediately submit charges for consumers' selections without permitting them to delete an item before the charge for that item was submitted for payment.  Nor did Defendant disclose or adequately disclose

anywhere on the website before consumers selected items that, once selected, the selection would be final and payment would be immediately processed.

77.    As a result, consumers who mistakenly or inadvertently selected products or services or who changed their minds after selecting them, were required to seek refunds through Defendant's refund process to recoup these unwanted charges.

78.    Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendant has violated or is about to violate laws enforced by the Commission because, among other things, Defendant engaged in the unlawful conduct over a period of four years, willfully and knowingly, despite having knowledge of hundreds of consumer complaints and refund requests, as well as inquiries by the Better Business Bureau regarding their deceptive practices and only ceased its unlawful activities after the FTC notified Defendant of its pending investigation.

## VIOLATIONS OF THE FTC ACT

79.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

80.    Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

81.    Acts or practices are unfair under Section 5 of the FTC Act if they cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.  15 U.S.C. § 45(n).

### Count I

### False or Unsubstantiated Claims Regarding DNA Testing

### Products and Services and Algorithm Software

82.    In numerous instances in connection with the advertising, marketing,

promotion, offering for sale, or sale of DNA testing products and services, including through the means described in Paragraphs 26 through 35 and Paragraphs 50-53 and 56-57, Defendant has represented, directly or indirectly, expressly or by implication, that Defendant's DNA testing products and services:

    A.  Are the most accurate and detailed DNA testing products and services available on the market;

    B.  Will show consumers' ancestry with an accuracy rate of over 90 percent;

    C.  Will show exactly where consumers' ancestors came from and exactly when they arrived there extending back over 50 or more generations; and

    D.  Are generated from a patented algorithm software.

83.    The representations set forth in Paragraph 82 are false and misleading and were not substantiated at the time the representations were made.

84.    Therefore, the making of the representations as set forth in Paragraph 82 constitutes a deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count II

## Failure to Disclose Material Connections to Marketing Websites

85.    In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of DNA testing products and services, including through the means described in Paragraphs 36 through 57, Defendant has represented, directly or indirectly, expressly or by implication, that geneticsdigest.com and buyerranking.com provided consumers with independent and unbiased research, ratings, and information related to genetics testing and DNA ancestry testing companies.

86.    In numerous instances in which Defendant has made the representations set forth in Paragraph 85, Defendant has failed to disclose or disclose adequately to consumers that Defendant has a material connection to the

websites geneticsdigest.com and buyerranking.com. This additional information would be material to consumers in deciding to purchase the DNA testing products and services that Defendant advertises, markets, promotes, offers for sale, or sells.

87.    In light of the representation described in Paragraph 85, Defendant's failure to disclose or disclose adequately the material information as set forth in Paragraph 86 constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count III

## False or Unsubstantiated DNA Testing Product and Service Ratings

88.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of DNA testing products and services, including through the means described in Paragraphs 36 through 57, Defendant has represented, directly or indirectly, expressly or by implication, that the websites geneticsdigest.com and buyerranking.com provide consumers with independent unbiased research, ratings, and information related to DNA testing and testing companies and their products and services, including Defendant's DNA testing products and services.

89.    The representation set forth in Paragraph 88 is false and misleading and were not substantiated at the time the representations were made.

90.    Therefore, the representation as set forth in Paragraph 88 constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count IV

## False or Misleading Endorsements

91.    Through the means described in Paragraphs 58 through 62, Defendant has represented, directly or indirectly, expressly or by implication, that certain reviews and testimonials of Defendant's DNA testing products and services on

CRI Genetics, LLC Complaint – Page 33

Defendant's websites and social media reflected the independent experiences and opinions of impartial ordinary users of Defendant's DNA testing products and services.

92.     In fact, numerous reviews of Defendant's DNA testing products and services on Defendant's websites and social media did not reflect the independent experiences and opinions of impartial ordinary users of Defendant's DNA testing products and services because they are not real purchasers or users of the products and services.  Therefore, the representation as set forth in Paragraph 91 is false and misleading in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**Count V**

**Deceptive Billing Practices**

93.     Through the means described in Paragraphs 63 through 77, Defendant has represented, directly or indirectly, expressly or by implication, that when consumers select products and services for purchase on Defendant's website, consumers' orders are not final and payment for the items selected will not be submitted until after consumers can confirm, edit, or delete their selections on a final confirmation page.

94.     In fact, when consumers selected products and services for purchase on Defendant's website, consumers' orders were final and payment for the items selected was submitted before consumers could confirm, edit, or delete their selections on a final confirmation page.  As result, in numerous instances, consumers were forced to seek a refund from Defendant for unwanted charges.

95.     Therefore, the making of the representation as set forth in Paragraph 93 constitutes a deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Count VI

### Failure to Disclose Immediate Charges

96.     Through the means described in Paragraphs 63 through 77, Defendant has represented, directly or indirectly, expressly or by implication, that when consumers select products and services for purchase on Defendant's website, consumers' orders are not final and payment for the items selected will not be submitted until after consumers can confirm, edit, or delete their selections on a final confirmation page.

97.     In numerous instances in connection with this representation, Defendant failed to disclose, or disclose adequately, that when consumers selected products and services for purchase on Defendant's website, consumers' orders were final and payment for the items selected was submitted before consumers could confirm, edit, or delete their selections on a final confirmation page.

98.     Defendant's failure to disclose the material information described in Paragraph 97, in light of the representation described in Paragraph 96, constitutes a deceptive act or practice, in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## <u>VIOLATIONS OF CALIFORNIA LAW</u>

### Count VII

### Untrue or Misleading Advertising

99.     Plaintiff California alleges and incorporates by reference Paragraphs 1 through 98 above as though fully set forth herein.

100.     Defendant has engaged in, aided and abetted, and conspired to engage in acts or practices that constitute violations of Business and Professions Code § 17500 *et seq*., by making or disseminating, or causing to be made or disseminated, false or misleading statements with the intent to induce members of the public to purchase Defendant's services or products when Defendant knew, or by the

exercise of reasonable care should have known, that the statements were false or misleading.

101.   Defendant's false or misleading statements include, but are not limited to, the following:

A.   False or misleading claims regarding DNA testing products and services and algorithm software in CRI branded websites, apps, social media pages, advertisements, and other promotional materials;

B.   False or misleading reviews, rankings, comparisons, and similar promotional efforts regarding CRI's products and services on purportedly independent websites owned, controlled, and/or operated by Defendant;

C.   False or misleading reviews and testimonials by purported customers; and

D.   False or misleading statements and user experiences in connection with ordering and paying for Defendant's products and services.

## Count VIII

### Unlawful, Unfair, and/or Fraudulent Business Practices

102.   Plaintiff The People of the State of California alleges and incorporates by reference Paragraphs 1 through 101 above as though fully set forth herein.

103.   Defendant has engaged in, aided and abetted, and conspired to engage in acts or practices that are unlawful, unfair, or fraudulent, and which constitute unfair competition within the meaning of Business and Professions Code § 17200. These acts or practices include, but are not limited to, the following:

A.   Defendant has violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), as alleged above;

B.   Defendant has violated Business and Professions Code § 17500 *et seq.*, as alleged in Count VII above;

C.   Defendant has violated the California Consumer Legal Remedies Act,

California Civil Code § 1770 (5), by representing that its goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

D.     Defendant has violated the California Consumer Legal Remedies Act, California Civil Code § 1770(7), by representing that its goods or services are of a particular standard, quality, or grade, when they are of another; and

E.     Defendant has violated the California Consumer Legal Remedies Act, California Civil Code § 1770(9), by advertising goods or services with intent not to sell them as advertised.

## CONSUMER INJURY

104.   Consumers have suffered and will continue to suffer substantial injury as a result of Defendant's violations of the FTC Act, California's Unfair Competition Law, and California's False Advertising Law.  Absent injunctive relief by this Court, Defendant is likely to continue to injure consumers and harm the public interest.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request that the Court:

A.     Enter a permanent injunction to prevent future violations of the FTC Act by Defendant;

B.     Pursuant to California's Business and Professions Code section 17535, that Defendant, along with Defendant's successors, agents, representatives, employees, and all persons who act in concert with Defendant, be permanently enjoined from making any false or misleading statements in violation of Business and Professions Code section 17500 as alleged in this Complaint;

C.     Pursuant to California's Business and Professions Code section 17203, that the Court enter all orders necessary to prevent Defendant, as well as Defendant's successors, agents, representatives, employees, and all persons who

act in concert with Defendant from engaging in any act or practice that constitutes unfair competition in violation of Business and Professions Code section 17200;

D.     Pursuant to California's Business and Professions Code section 17203, that the Court enter all orders or judgments as may be necessary to restore to any person in interest any money or other property that Defendant may have acquired by violations of Business and Professions Code section 17200, as proved at trial;

E.     Pursuant to California's Business and Professions Code section 17536, that the Court assess a civil penalty of two thousand five hundred dollars ($2,500) against Defendant for each violation of Business and Professions Code section 17500, as proved at trial;

F.     Pursuant to California's Business and Professions Code section 17206, that the Court assess a civil penalty of two thousand five hundred dollars ($2,500) against Defendant for each violation of Business and Professions Code section 17200, as proved at trial;

G.     Pursuant to California's Business and Professions Code section 17206.1, subdivision (a), that the Court assess, in addition to any penalties assessed under Business and Professions Code sections 17206 and 17536, a civil penalty of two thousand five hundred dollars ($2,500) against Defendant for each violation of Business and Professions Code section 17200 perpetrated against senior citizens or disabled persons, as proved at trial;

H.     That Plaintiffs recover their costs of suit; and

I.     For such other and further relief that the Court deems just and proper.

Respectfully submitted,

Dated:  November 20, 2023

s/Nadine S. Samter
NADINE S. SAMTER

KATHARINE BARACH
Federal Trade Commission
915 Second Avenue, Ste. 2896
Seattle, WA  98174
Tel: (206) 220-6350
Samter Work Cell (202) 725-4585

CARLA L. CHEUNG
Federal Trade Commission
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
Tel: (310) 824-4300/Cell: (202) 644-6785
Fax: (310) 824-4318

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

Dated: Nov. 20       , 2023

ROB BONTA
Attorney General of California
NICKLAS A. AKERS
Senior Assistant Attorney General
JUDITH FIORENTINI
Supervising Deputy Attorney General

MICAH C.E. OSGOOD
Deputy Attorney General
MICHELLE BURKART
Deputy Attorney General

California Department of Justice
455 Golden Gate Ave. Suite 11000
San Francisco, CA 94102
(415) 510-44002
mike.osgood@doj.ca.gov

CRI Genetics, LLC Complaint – Page 39

Attorneys for Plaintiff
PEOPLE OF THE STATE OF
CALIFORNIA